UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION;
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

    Plaintiffs,

v.

DEPARTMENT OF DEFENSE; CENTRAL
INTELLIGENCE AGENCY,

    Defendants.

**COMPLAINT FOR INJUNCTIVE RELIEF**

Civil Action No.



## COMPLAINT FOR INJUNCTIVE RELIEF

### Preliminary Statement

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking, principally, the expedited processing and release of agency records requested by plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively "ACLU") from defendants Department of Defense ("DoD") and Central Intelligence Agency ("CIA").

2.     On April 30, 2007, the ACLU filed FOIA requests ("Requests") seeking records about the DoD and the CIA's use of National Security Letters ("NSL") to demand sensitive records about people in the United States without court approval. Specifically, the Requests sought the release of all records pertaining to defendants' use of NSLs issued pursuant to 18 U.S.C. § 2709, 12 U.S.C. § 3414, 15 U.S.C. § 1681u, 15 U.S.C. § 1681v, or 50 U.S.C. § 436 (or the use of any written demand or request for

1

information of the type covered by those statutes), to gain access to records pertaining to any person within the United States.

3.  The ACLU submitted the Requests after numerous media reports that the DoD and the CIA may be abusing the NSL authority, or issuing NSLs without any legal authority whatsoever, and after the Department of Justice Inspector General ("IG") revealed extensive and serious abuses of the NSL authority by the Federal Bureau of Investigation ("FBI"). Since plaintiffs submitted the Requests, the media has reported that internal audits show that FBI abuse of this intrusive power may have been even more extensive than originally reported.

4.  The information now in the public domain suggests that defendants may be abusing the NSL authority and may be engaging in unauthorized domestic intelligence gathering. Information pertaining to the DoD and the CIA's use of NSLs is vital to the public's understanding of the way in which the government as a whole is using NSLs to gather personal data about people in the United States, and imperative to a fuller understanding of the DoD and the CIA's expanding foray into domestic surveillance more generally.

5.  Plaintiffs are entitled to expedited processing of their Requests and timely release of the records sought. Although the public interest in the release of these documents is manifest, both the DoD and the CIA have refused plaintiffs' requests for expedited processing and have failed to release the records requested.

## Jurisdiction and Venue

6.  This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. §

552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 501 U.S.C. §§ 701-706. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

7. The American Civil Liberties Union is a nationwide, non-profit, non-partisan organization with over 500,000 members dedicated to the constitutional principles of liberty and equality.

8. The American Civil Liberties Union Foundation ("ACLUF") is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. The ACLUF has filed multiple FOIA requests pertaining to the government's use of NSLs. The ACLUF has also challenged the legality of the NSL power in multiple lawsuits.

9. Defendant DoD is a Department of the Executive Branch of the United States Government. The DoD is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10. Defendant CIA is a Department of the Executive Branch of the United States Government. The CIA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## National Security Letters

11. NSLs are written demands for records issued by government agencies to seek the production of a broad array of sensitive information about individuals within the United States. These demands are issued without probable cause and without any prior judicial approval.

12. NSLs may be used by the FBI to obtain subscriber information, toll billing records or electronic communication transactional records from wire or electronic

information service providers (18 U.S.C. § 2709); by any government authority authorized to conduct foreign intelligence activities, or to conduct investigations related to international terrorism, to obtain financial records (12 U.S.C. § 3414; 50 U.S.C. § 436); or by the FBI (15 U.S.C. § 1681u) and/or other authorized government authorities (50 U.S.C. § 436; 15 U.S.C. § 1681v) to obtain credit or consumer records. None of these statutes mention the DoD or the CIA specifically.

13. The Patriot Act vastly expanded the government's power to obtain personal information pertaining to individuals within the United States through NSLs. NSLs may now be used to obtain sensitive information about innocent individuals who have no connection to espionage or terrorism.

14. In most or all cases, the NSL recipients are informed that they are prohibited from disclosing that the agency has sought or obtained information through the NSL.

### DoD and CIA use of National Security Letters

15. On January 13, 2007, the *New York Times* reported that the DoD and the CIA have been issuing NSLs to demand sensitive credit and financial records about people in the United States without court approval, and in some instances, without any clear statutory authority to do so. Eric Lichtblau and Mark Mazzetti, *Military Expands Intelligence Role in U.S.*, N.Y. TIMES, Jan. 13, 2007. In particular, the *Times* reported that the DoD had issued what was estimated to be thousands of NSLs over the past five years. *Id.*

16. After the initial report, there was extensive media interest in defendants' use (and possible abuse) of the NSL authority. *See* Editorial, *Not Above the Law*, COLUMBUS DISPATCH, Jan. 23, 2007, at 8A; Robyn Blumner, Editorial, *In Cheney's World, We All*

*Report to the Military*, ST. PETERSBURG TIMES, Jan. 21, 2007, at 5P; Editorial, *Our View on Security and Civil Liberties: No Court Order Needed*, USA TODAY, Jan. 18, 2007; Editorial, *Congress Must Step in to Stop Government Snooping*, KANSAS CITY STAR, Jan. 16, 2007; *Cheney Defends Taking of Americans' Bank Records*, DETROIT FREE PRESS, Jan. 15, 2007, at 4; Nitya Venkataraman, *What Uncle Sam Knows About You*, ABCNews.com, Jan. 15, 2007; David Savage, *Cheney Defends Pentagon*, L.A. TIMES, Jan. 15, 2007; Mark Mazzetti, *Cheney Defends Efforts to Obtain Records*, N.Y. TIMES, Jan. 15, 2007; Mark Follman, *Banking on Increased Spying at Home*, Salon.com, Jan. 15, 2007; Interview with Vice President Dick Cheney, Fox News Sunday, Jan. 14, 2007; *Cheney Defends Pentagon Financial Records Searches*, ASSOCIATED PRESS, Jan. 14, 2007; Karen DeYoung, *Officials: Pentagon Probed Finances*, WASH. POST, Jan. 14, 2007, at A12; Julian E. Barnes and Greg Miller, *Pentagon Conducting Probes in U.S.*, L.A. TIMES, Jan. 14, 2007; Lolita Baldor, *Pentagon Viewing Americans' Bank Records*, ASSOCIATED PRESS, Jan. 14, 2007; *Pentagon, CIA Expand U.S. Intel Gathering*, UNITED PRESS INTERNATIONAL, Jan 14, 2007; Eric Lichtblau and Mark Mazzetti, *Military Expands Intelligence Role in U.S.*, N.Y. TIMES, Jan. 13, 2007.

17.  There are numerous open questions about the DoD and the CIA's use (and possible abuse) of the NSL power. The authority under which defendants' have been issuing the letters is unknown. *See* Lolita Baldor, *Pentagon Viewing Americans' Bank Records*, ASSOCIATED PRESS, Jan. 14, 2007 (reporting that the DoD "makes requests for information under authorities of the National Security Letter statutes ... but does not use the specific term National Security Letter in its investigatory practice"); Eric Lichtblau and Mark Mazzetti, *Military Expands Intelligence Role in U.S.*, N.Y. TIMES, Jan. 13,

2007 (reporting that the DoD and the CIA have been "using their own ... versions of the letters"); *id.* (reporting that lawyers at financial institutions have expressed confusion over the scope of the information requested and whether they were obligated to turn over the records).

18. Whether the NSLs used by defendants are compulsory is also unknown. *Compare* Eric Lichtblau and Mark Mazzetti, *Military Expands Intelligence Role in U.S.*, N.Y. TIMES, Jan. 13, 2007 (reporting that the DoD and the CIA have issued only non-compulsory requests), *and* Mark Mazzetti, *Cheney Defends Efforts to Obtain Records*, N.Y. TIMES, Jan. 15, 2007 (quoting Vice President Dick Cheney as stating "if an institution that receives one of these national security letters disagrees with it, they're free to go to court to *try* to stop its execution") (emphasis added); *Cheney Defends Pentagon Financial Records Searches*, ASSOCIATED PRESS, Jan. 14, 2007 (same).

19. Reports about DoD and CIA NSL use raise questions as to whether those agencies are engaging in unauthorized domestic intelligence gathering. *See, e.g.*, Eric Lichtblau and Mark Mazzetti, *Military Expands Intelligence Role in U.S.*, N.Y. TIMES, Jan. 13, 2007 (reporting that the DoD is "moving into territory where historically they have not been authorized or presumed to be operating"); *id.* (quoting a former assistant general counsel at the CIA as stating "if [the CIA has] been issuing their own national security letters, they better be able to explain how they don't cross the line").

## More Recent Revelations of NSL Abuse

20. The relaxed statutory restrictions on NSL use, and the excessive secrecy surrounding the government's use of NSLs, have resulted in serious government abuses of the NSL power. In March 2007, the IG issued a report about the FBI's use of NSLs.

6

The IG found numerous instances of improper or illegal use of NSLs, even in its small random sampling, which suggest NSL abuse was widespread. For example, the report found that the FBI issued NSLs even where no underlying investigation had been approved; obtained records it was not authorized to collect; obtained more information from recipients than was requested; obtained information about telephone numbers that did not belong to the target of the NSLs; and relied on so-called "exigent letters," which were unauthorized by law, to obtain telephone toll billing records and subscriber information outside of the NSL process. The IG report also found that in its annual reports to both the House and the Senate in 2003, 2004 and 2005, the FBI significantly under-reported the number of NSL requests issued during that time. The report found that from 2003-2005, the FBI issued at least 143,047 NSLs.

21.     There was widespread media interest in the IG's report. *See, e.g., Bush Addresses Misuse of FBI Subpoenas*, N.Y. TIMES, Mar. 11, 2007; Lara Jakes Jordan, *Gonzales, Mueller Admit FBI Broke Law*, WASH. POST, Mar. 10, 2007; Richard Schmitt, *FBI Abuses May Lead to Patriot Act Limits*, L.A. TIMES, WASH. POST, Mar. 10, 2007; Jerome Sherman, *Specter Calls for Patriot Act Review*, PITTSBURGH POST-GAZETTE, Mar. 10, 2007; R. Jeffrey Smith, *Report Details Missteps in Data Collection*, WASH. POST, Mar. 10, 2007, at A01; David Stout, *FBI Head Admits Mistakes in Use of Security Act*, N.Y. TIMES, Mar. 10, 2007; Dan Eggen and John Solomon, *FBI Audit Prompts Calls for Reform*, WASH. POST, Mar. 10, 2007, at A01; Michael Abramovitz and Paul Kane, *Gonzales Tries to Mollify GOP Critics on Firings, Missteps*, WASH. POST, Mar. 10, 2007, at A05; Kelli Arena and Elaine Quijano, *Audit: FBI's Patriot Act Snooping Broke Rules*, CNN.com, Mar. 9, 2007; Barton Gellman and John Solomon, *Frequent Errors in FBI's*

*Secret Records Requests*, WASH. POST, Mar. 9, 2007, at A01; Glenn Greenwald, Editorial, *The FBI's Lawbreaking is Tied Directly to President Bush*, Salon.com, Mar. 9, 2007; Tim Grieve, *Inspector General: FBI is Misusing "National Security Letters,"* Salon.com, Mar. 9, 2007.

22.  Less than two weeks ago, a comprehensive internal FBI audit reportedly confirmed that abuse of the NSL power is systemic. John Solomon, *FBI Finds It Frequently Overstepped in Collecting Data*, WASH. POST, Jun. 14, 2007, at A1.

### Official Responses to NSL Abuses

23.  Following these reports, major editorial pages have called on the government to put an end to the unlawful abuse of the NSL power and to evaluate whether existing NSL statutes should be amended to prevent further abuse. *See, e.g.,* Editorial, *Abuse of Authority*, WASH. POST, Mar. 11, 2007, at B06; Editorial, *The Failed Attorney General*, N.Y. TIMES, Mar. 11, 2007, § 4 at 13; Editorial, *Our View on Security and Civil Liberties: No Court Order Needed*, USA TODAY, Jan. 18, 2007; *see also*, John Doe, Op-Ed., *My National Security Letter Gag Order*, WASH. POST, Mar. 23, 2007, at A17.

24.  In light of this increased public scrutiny, senior officials have commented on the NSL abuses. *See, e.g., Bush Addresses Misuse of FBI Subpoenas*, N.Y. TIMES, Mar. 11, 2007; David Stout, *FBI Head Admits Mistakes in Use of Security Act*, N.Y. TIMES, Mar. 10, 2007; Lara Jakes Jordan, *Gonzales, Mueller Admit FBI Broke Law*, WASH. POST, Mar. 10, 2007; Michael Abramovitz and Paul Kane, *Gonzales Tries to Mollify GOP Critics on Firings, Missteps*, WASH. POST, Mar. 10, 2007, at A05; Federal Bureau of Investigation Director Robert Mueller, *Press Conference on the Department of Justice Inspector General's Report on National Security Letters and Patriot Act Powers*, Federal

News Service, Mar. 9, 2007; Mark Mazzetti, *Cheney Defends Efforts to Obtain Records*, N.Y. TIMES, Jan. 15, 2007; *Cheney Defends Pentagon Financial Records Searches*, Associated Press, Jan. 14, 2007; Interview with Vice President Dick Cheney, Fox News Sunday, Jan. 14, 2007.

25. In addition, members of Congress have convened a number of hearings on the abuses and the scope of the NSL authority. *See, e.g., Hearing of the Senate Select Committee on Intelligence: National Security Letters*, 110th Cong. (2007); *Hearing of the Senate Select Committee on Intelligence: Intelligence Legislation*, 110th Cong. (2007); *Hearing of the Constitution, Civil Rights and Property Rights Subcommittee of the Senate Judiciary Committee: Responding to the Inspector General's Findings of Improper Use of National Security Letters by the FBI*, 110th Cong. (2007); *Hearing of the House Judiciary Committee: FBI Patriot Act Misuse*, 110th Cong. (2007); *Hearing of the House Permanent Select Committee on Intelligence: The FBI's Use of National Security Letters and Section 215 Requests for Business Records*, 110th Cong. (2007).

### The FOIA Requests

26. On April 30, 2007, the ACLU filed FOIA requests with the DoD and the CIA seeking the release of any and all records concerning defendants' use of NSLs issued pursuant to 18 U.S.C. § 2709, 12 U.S.C. § 3414, 15 U.S.C. § 1681u, 15 U.S.C. § 1681v, or 50 U.S.C. § 436, to gain access to credit, financial, electronic, electronic communication transactional, and/or other personal records pertaining to military personnel, civilians, or any person within the United States. Plaintiffs' Requests also sought the release of any and all records concerning defendants' issuance of any written request or demand for information of the type covered by the NSL statutes regardless of

whether the request or demand was issued pursuant to those statutes, and regardless of whether the request or demand was called an NSL. The records requested included, but were not limited to: copies of NSLs, letters, or demands; statistical data; statistical reports; legal authorities; memoranda; policies; procedures; directives; guidance; practices; the kinds of information sought or obtained through NSLs, letters, or demands; correspondence; complaints; inquiries; investigations, and disciplinary actions.

27.  Plaintiffs sought expedited processing of the Requests on the grounds that the records sought are urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public about actual or alleged Federal government activity" and because the records sought also relate to a "breaking news story of general public interest."

### Agency Responses

28.  By letter of May 10, 2007, defendant DoD denied plaintiffs' request for expedited processing in part because the topic of the Requests had already received "broad and sustained media coverage." According to the letter, this ongoing coverage "belies [plaintiffs'] contention that the requested information relates to a breaking news story." The DoD also refused to grant or deny plaintiffs' request for waiver or limitation of processing fees claiming a determination could not be made "until a search for responsive records has been conducted and the volume and nature of any responsive records have been determined."

29.  By letter of May 25, 2007, defendant CIA denied plaintiffs' request for expedited processing and stated that because of "unavoidable processing delays" it would

be unlikely to process the request within twenty days, as required by statute. The CIA also denied plaintiffs' request for a waiver or limitation of processing fees.

30. To date, defendants have not disclosed any record in response to plaintiffs' Requests nor stated which records, if any, they intend to disclose.

31. Defendants are improperly withholding the records sought by plaintiffs' Requests.

## Plaintiffs' Entitlement to Expedited Processing

32. Plaintiffs are entitled to expedited processing of their Requests.

33. The FOIA provides that each agency shall provide for expedited processing of FOIA requests where the requester demonstrates "a compelling need" for the information. 5 U.S.C. § 552(a)(6)(E)(i)(I).

34. Under the FOIA and defendant DoD's corresponding regulations there is a "compelling need" for expedited processing where the records at issue are urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(ii); 32 C.F.R. § 286.4(d)(3)(ii). Under DoD's corresponding regulations, records are urgently needed where they relate to a "breaking news story of general public interest." 32 C.F.R. § 286.4(d)(3)(ii)(A).

35. Under the FOIA and defendant CIA's corresponding regulations there is a "compelling need" for expedited processing where the records at issue are urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v); 32 C.F.R. § 1900.34(c)(2).

36. Plaintiffs' Requests implicate a matter of urgent public concern; namely, the defendants' use (and possible abuse) of the NSL power as a domestic investigatory tool. Defendants' demands for credit, financial, electronic, electronic communication, phone, transactional, and/or other personal records without prior judicial approval, and perhaps without any statutory authorization, may violate existing law and regulations. Defendants' alleged abuse of the NSL provisions also implicates basic privacy, free speech and associational rights protected by the Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease and future violations are prevented.

37. As alleged above, the records requested relate to a matter of public urgency, and also constitute a breaking news story. The ongoing and evolving coverage of this issue – by both Congress and the media – confirms that there is an urgent need to inform the public about how *all* facets of the government are using NSLs. The IG's March 2007 report concerning extensive and serious FBI abuses of the NSL authority merely underscores the urgency of the Requests.

38. The ACLU is "primarily engaged in disseminating information" to the public within the meaning of the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R. § 286.4(d)(3)(ii); 32 C.F.R. § 1900.34(c)(2). Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. As the leading defender of freedom, equality, privacy, and due process rights in the United States, the ACLU has sought information and educated the public about various government surveillance methods utilized and expanded since the 9/11 terrorist attacks, including the government's use of NSLs. The ACLU publishes newsletters, news

briefings, right-to-know handbooks and other materials that are disseminated to the public. These materials – including materials based on information obtained through the FOIA – are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its website, www.aclu.org, and through an electronic newsletter, which is distributed to subscribers by e-mail. In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools, and organizations through a variety of means, including their own websites, publications, and newsletters.

39. The ACLU is "primarily engaged in dissemination about information" about NSLs, in particular. Through widely publicized reports – as well as information distributed through its website – the ACLU has played a leading role in disseminating information about the use of NSLs. The ACLU has also been directly involved in multiple FOIA and substantive lawsuits over the government's NSL authority. These challenges have resulted in the dissemination of a broad array of information concerning the nature and scope of the NSL power. Since 2001, the ACLU has also been a primary disseminator of information about government surveillance more generally. For example, based on documents it obtained through the FOIA, the ACLU recently published a report concerning the Pentagon's surveillance of peaceful anti-war activists. The ACLU also continues to be a primary source of information about the National Security Agency's warrantless surveillance activity.

40.  The ACLU will likewise disseminate any information obtained through these Requests to the public through the publications and channels described above.

### Plaintiffs' Entitlement to a Waiver or Limitation of Processing Fees

41.  The ACLU is entitled to a waiver of document search, review, and duplication fees because disclosure is "likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 286.28(d); 32 C.F.R. § 1900.13(b)(2).

42.  As alleged above, numerous news accounts reflect the considerable public interest in the records plaintiffs seek. Given the ongoing and widespread media attention to this issue, the records sought in the instant Requests will significantly contribute to public understanding of the operations and activities of the DoD and the CIA. In addition, disclosure is not in the ACLU's commercial interest. As described above, any information disclosed by the ACLU as a result of the Requests will be available to the public at no cost.

43.  The ACLU is also entitled to a waiver of document reproduction fees (in the case of defendant DoD), 32 C.F.R. § 286.28(e)(7), and limitation of document reproduction fees (in the case of defendant CIA), 32 C.F.R. § 1900.13(i)(2), because the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. *See also* 5 U.S.C. § 552(a)(4)(A)(ii)(II).

44.  The ACLU is a representative of the news media for the purposes of FOIA because it is an entity that gathers information of potential interest to a segment of the

public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.

45. Plaintiffs do not seek the requested information for commercial reasons. The ACLU summarizes, explains and disseminates the information it gathers through FOIA at no cost to the public.

### Causes of Action

46. Plaintiffs repeat and reallege paragraphs 1-45.

47. Defendants' failure to make promptly available the records sought by plaintiffs' Requests violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and defendants' corresponding regulations.

48. Defendants' failure to timely respond to plaintiffs' Requests violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and defendants' corresponding regulations.

49. Defendants' failure to grant plaintiffs' requests for expedited processing violates the FOIA, 5 U.S.C. § 552(a)(6)(E), and defendants' corresponding regulations.

50. Defendants' failure to make a reasonable effort to search for records responsive to the plaintiffs' Requests violates the FOIA, 5 U.S.C. § 552(a)(3)(C), and defendants' corresponding regulations.

51. Defendants' failure to grant plaintiffs' Requests for a waiver of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and defendants' corresponding regulations.

52. Defendants' failure to grant plaintiffs' Requests for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and defendants' corresponding regulations.

## Requested Relief

WHEREFORE, plaintiffs pray that this Court:

1. Order defendants immediately to process all requested records;

2. Order defendants to conduct a thorough search for all responsive records;

3. Order defendants to promptly disclose the requested records in their entirety, and make copies available to plaintiffs;

4. Enjoin defendants from charging plaintiffs fees for the processing of their Requests;

5. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

6. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

MELISSA GOODMAN (MG-7844)
JAMEEL JAFFER (JJ-4653)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-549-2500
Fax: 212-549-2629

ARTHUR N. EISENBERG (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004

June 28, 2007